UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>    v.<br><br>Real property commonly known as 26 Everett Road, Colonie, New York, 12205,<br><br>                Defendant. | Civil Action No.:  1:23-CV-1473 (GLS/CFH) |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Carla B. Freedman, United States Attorney for the Northern District of New York, and Elizabeth Conger, Assistant United States Attorney, brings this verified complaint for forfeiture *in rem* against the above-captioned property (the "Defendant Real Property") and alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure and Title 18, United States Code, Sections 981 and 985.

## THE PARTIES

1. The Plaintiff is the United States of America.

2. The Defendant Real Property, commonly referred to as 26 Everett Road, Colonie, New York, 12205, is, as follows:

## SCHEDULE A

ALL THAT PIECE OR PARCEL OF LAND, situate, in the Town of Colonie, County of Albany and State of New York, together with the improvements thereon more fully described as follows:

BEGINNING at a point in the westerly line of the highway between West Albany and Shaker Road, known as Everett Road, which point is the southeasterly corner of the lot conveyed by James E. Glavin and Anna C. Glavin, his wife, to Phillip C.

1

Miller by deed dated June 11, 1925 and recorded in the Albany County Clerk's Office on June 15, 1925 in Liber 761 of Deeds at Page 265, the said point of beginning also being South 83 degrees and 33 minutes east 21.38 feet distant from the northeasterly corner of the one-family dwelling now standing on the lands being herein conveyed, thence south 30 degrees and 20 minutes west and along the westerly line of Everett Road 50 feet to a steel pipe; thence north 59 degrees and 40 minutes west and at right angles to the said westerly line of Everett Road 279.61 feet to a steel pipe set in an old wire fence line west of Sand Creek; thence north 34 degrees and 17 minutes east and along the said wire fence line 50.12 feet to a steel pipe; thence south 59 degrees and 40 minutes east and partly along the southerly line of the said lands conveyed to Phillip C. Miller 276.16 feet to a steel pipe set at the point or place of beginning.

BEING the same premises conveyed to the party of the first part by Charles Wilcox, Esq. as Referee, by Referee deed dated the 16th day of October, which deed was recorded in the Albany County Clerk's Office on October 23, 2008 in Liber 2934 of Deeds at Page 721.

## BASIS FOR FORFEITURE

3.      This action *in rem* is brought against the Defendant Real Property pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) as the proceeds of offenses in violation of Title 18, United States Code, Section 641 (theft of public money), and the proceeds of, and property involved in, offenses in violation of Title 18, United States Code, Sections 1956 (money laundering), and 1957 (engaging in monetary transactions in property derived from specified unlawful activity). The matter is also brought pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

4.      Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture of: "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

5.      Title 18, United States Code, Section 981(a)(1)(C) provides for the forfeiture of: "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a

violation of … any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355.

7. Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345.

8. Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355(a).

9. This Court has *in rem* jurisdiction over the Defendant Real Property and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b), which provides that a forfeiture action or proceeding "may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).

10. The Defendant Real Property has not been seized but is within the jurisdiction of the Court. The United States does not request authority from the Court to seize the Defendant Real Property at this time.

11. The government will, in accordance with Title 18, United States Code, Section 985(c)(1), post notice of the complaint on the Defendant Real Property and serve notice on the property owner(s), along with a copy of the complaint for forfeiture. 18 U.S.C. § 985(c)(1)(B) and (C).

**FACTS**

12. This civil forfeiture matter arises in connection with an investigation into three individuals, Asjid Parvez ("Parvez"), Drasana Johnson ("Johnson"), and Benedetto Calcavecchia ("Calcavecchia"), for offenses in violation of Title 18, United States Code, Section 641 (theft of federal funds); Title 18, United States Code, Section 371 (conspiracy against the United States); and Title 18, United States Code, Sections 1956 and 1957 (money laundering offenses).

13. In or around 2014, Parvez purchased a chicken farm in Maryland, obtaining a loan in the amount of $860,000 for the farm property issued by Mid-Atlantic Farm Credit.

14. Mid-Atlantic Farm Credit merged with another farm credit company in or about July 2022, to form Horizon Farm Credit ("HFC"). HFC is an agricultural lender based in Pennsylvania.

15. The 2014 loan obtained from Mid-Atlantic Farm Credit was federally guaranteed through the Farm Service Agency ("FSA"), which is a part of the United States Department of Agriculture ("USDA").

16. Parvez defaulted on the loan on or about March 1, 2018.

17. As a result of the default, HFC foreclosed upon, took possession of, and sold the farm. However, as of September 30, 2022, Parvez still owed $951,614.36 on the loan.

18. The Inflation Reduction Act of 2022 allowed the FSA to financially assist certain distressed borrowers who had fallen behind in the repayment of their farm loans.

19. On or about May 1, 2023, FSA mailed a letter to Parvez at his residence in Albany, New York, advising that the FSA would provide "relief in the form of payments and/or loan modifications to distressed direct and guaranteed Farm Loan Programs ('FLP') borrowers." The

letter further stated that Parvez's "account was identified as having one or more FLP loans that meet the qualifying criteria above."

20. The letter informed Parvez that he would soon receive a United States Treasury check in the amount of $972,564.61, made jointly payable to Parvez and to his lender, HFC ("the Treasury check").

21. In May of 2023, the government mailed the Treasury check to Parvez at his residence in Albany, New York. The check, dated May 3, 2023, was jointly payable to Parvez and to HFC, and stated the following on the memo line: "PGM: GURNTEELOAN LN 50."

22. HFC emailed Parvez inquiring about the Treasury check. For instance, on May 10, 2023, an HFC employee sent an email to Parvez entitled "Federal Funds," which stated:

> We received the attached letter from FSA stating you will be receiving funds through the Inflation Reduction Act. Could you please let me know if you have received those funds? If so, please endorse the check and send it to me at the address below. Feel free to contact me with any questions.

23. Parvez responded by email that same day, stating that he had not yet received the check and asked what address it would be sent to.

24. On May 12, 2023, Parvez and Calcavecchia entered the Colonie branch of Pioneer Bank, with which Parvez had a pre-existing banking relationship. The two men presented a "Doing Business As" ("DBA") certificate that had been filed with the Albany County Clerk on the previous day. The certificate purported to show that Calcavecchia did business as Horizon Farm Credit – the same name as the legitimate Pennsylvania-based lender denoted as "HFC" above.

25. That same day, Parvez and Calcavecchia used the DBA certificate to open an account at Pioneer Bank in the name of Calcavecchia doing business as Horizon Farm Credit, ("Pioneer Account 8473"). Parvez and Calcavecchia were listed as the account signatories, and

deposited the Treasury check into Pioneer Account 8473.  Other than an initial deposit of $20 and the deposit of the Treasury check, no other credits were made to Pioneer Account 8473.

26. On May 16, 2023, the HFC employee emailed Parvez and wrote that it appeared that the check would be sent to "Parvez's address in Albany.  Parvez emailed back stating that the address in Albany was correct but that he was in Boston and would contact the HFC employee in a few days.  At the time this email was sent, Parvez had already deposited the Treasury check four days prior, on May 12, 2023.

27. The same HFC employee later emailed Parvez about the Treasury check on several additional occasions, including June 2, 2023, June 14, 2023, and June 21, 2023 with no apparent response from Parvez.

28. After the Pioneer Account 8473 was opened on May 12, 2023, the funds from the Treasury check were then transferred and spent contrary to their designated purpose, which was to pay down Parvez's distressed farm loan.

29. For example, between May 13, 2023, and May 22, 2023, the funds in Pioneer Account 8473 were used to fund teller's checks in the amount of $9,000 to Calcavecchia and $6,000 to an Albany-area attorney, and to make other purchases unrelated to the farm loan, such as a $1,151.57 payment to E-Z Pass NY.

30. On May 22, 2023, Parvez returned a call from Pioneer Bank's customer service line and asked to speak to a specific bank employee, stating that he had missed a call from this person.

31. Pioneer had initially called Parvez because the bank's security department was concerned about the fact that Parvez and Calcavecchia had opened an account in the name of Horizon Farm Credit.

32. Parvez was connected to the Pioneer employee who had left the message, and the call was recorded by Pioneer Bank. During the call, Parvez said that Horizon Farm Credit was not a lender, adding that "we just liked that name and went with it." He said that he could put the money in a new account if the bank wanted him to. He further stated that Calcavecchia lived on the farm in Maryland "on and off."

### A. *Transfer of the Funds into Drasana Johnson's Accounts.*

33. As set forth below, between May 13 and May 25, 2023, the funds from the Treasury check that were initially deposited into Pioneer Account 8473 were largely transferred to a Pioneer Bank account for which Parvez and his girlfriend, Johnson, were both signatories. The funds were then transferred into Bank of America accounts for which Johnson is the only signatory and were eventually used to purchase the Defendant Real Property. The chart in Attachment A traces the transfer of the funds from the Treasury to the purchase of the Defendant Real Property. *See* Attachment A: Tracing the Funds Used to Purchase the Defendant Real Property.

34. On May 13, 2023, Parvez and Calcavecchia entered a Pioneer Bank branch in Glenmont, New York, and transferred $389,768.13 in funds from Pioneer Account 8473 into another Pioneer Bank account ending in 2159, ("Pioneer Account 2159"). Pioneer Account 2159 was held in the name of Eden General Corp. ("Eden"), and Parvez and Johnson were both signatories to the account. Prior to this transfer from Pioneer Account 8473, Pioneer Account 2159 had a negative balance of $103.47.

35. On May 22, 2023, Parvez and Johnson entered Pioneer Bank's Wolf Road branch in Albany, New York, and Parvez transferred an additional $563,700 in funds from Pioneer Account 8473 into Pioneer Account 2159.

7

36. Together, these transfers from Pioneer Account 8473 into Pioneer Account 2159 totaled $953,468.13.

37. On May 25, 2023, Johnson entered Pioneer Bank's Wolf Road Branch and obtained a teller's check for $878,698, representing most of the funds that had been transferred into Pioneer Account 2159 from Pioneer Account 8473. She then deposited the $878,698 into her personal Bank of America account ending in 8784 ("BoA Account 8784").

38. Johnson had opened BoA Account 8784 in April of 2022. On May 25, 2023, prior to the deposit of the $878,698, the account had an account balance of $591.80.

39. Between May 25 and June 26, 2023, BoA Account 8784 received net deposits of $8.75.

40. On June 3, 2023 Johnson opened Bank of America Account 7289 ("BoA Account 7289") in the name of Helping Hand Properties 518, Inc. She is listed as the President of Helping Hand Properties 518, Inc., and is the account's only signatory.

41. On June 5, 2023, she transferred $600,000 from BoA Account 8784 into BoA Account 7289. Prior to this transfer of funds from BoA Account 8784, BoA Account 7289's balance stood at $0.00.

42. Between June 5 and July 31, 2023, BoA Account 7289 received no further deposits or credits.

43. Between June 5 and July 31, 2023, there were several withdrawals and debits from BoA Account 7289, including a June 29, 2023 withdrawal of $202,675.25 for seven (7) separate cashier's checks drawn from the account.

44. As of July 31, 2023, BoA Account 7289's balance stood at $373,279.75.

45. On or about August 16, 2023, Bank of America froze BoA Account 8784 and BoA Account 7289 due to concerns about fraud.

46. On October 2, 2023, a federal warrant was issued by a United States Magistrate Judge in the Northern District of New York for the seizure of all funds on deposit in BoA Account 8784 and BoA Account 7289.

### B. Johnson's Knowledge of the Misuse of the Treasury Funds.

47. Parvez was arrested on September 6, 2023. The FBI seized and later searched his primary phone pursuant to a warrant issued in the Northern District of New York. His phone was found to contain thousands of messages exchanged with Johnson, including messages dating from May 2023 to September 2023. These messages show that Johnson was aware of Parvez's theft of the funds from the Treasury check.

48. For instance, on May 10, 2023, Parvez sent Johnson a PDF containing a copy of the May 1, 2023 letter that the FSA sent to HFC, informing HFC that Parvez would soon be receiving a check in the amount of $972,564.61. Parvez then wrote to Johnson, "Where the F is this check." They exchanged the following messages later that day:

| Sender | Message |
|---|---|
| Johnson | WOW |
| Johnson | but the check is also made out to who you got the loan from |
| Johnson | So it has to go right to pay off the loan but that's amazing baba!!! |
| Johnson | It was mailed out |
| Parvez | I hope it has just my name on it cash it |
| Johnson | In the letter it says your name and the loan company's name |
| Parvez | Yes I saw |
| Johnson | It says if used for anything else they will reduce the amount lol |
| Johnson | Thanks Biden |
| Parvez | Yes if it's under just my name IF we cashing it |
| Johnson | Lmao wow |
| Parvez | I am serious will see what happens after I'll do some time lol |

9

49. These text messages from May 10, 2023 indicate that Parvez and Johnson both understood the purpose of the Treasury check was to "pay off the loan."

50. On May 13, 2023, Parvez messaged Johnson, "Dude dude out [our] freaking funds are available at Pioneer" and "Benny[1] went this morning."

51. Parvez and Johnson then exchanged numerous celebratory messages, and Johnson then wrote, "Soooooooo happy for you and thankful to Benny for being crooked and coming up with that Lmao."

52. On May 17, 2023, Parvez and Johnson exchanged the following messages:

| Sender | Message |
| --- | --- |
| Parvez | Just trying to find some answers and plan accordingly |
| Johnson | Yes baba |
| Parvez | Just don't want to this go backwards |
| Parvez | Incase |
| Johnson | Yes baba neither do I |
| Parvez | If they can track it and out hold on it some how or take thrn I have to plan by that |
| Johnson | Yes baba |
| Johnson | For that to not happen, you have to keep the lender company at bay |
| Johnson | Respond back saying you got the weeks ago, you looked it up in your email because you get notified of what mail comes in, and you have to look for it or something |
| Johnson | Something to just hold them off from contacting the treasury department |
| Parvez | Of course I been doing that and will do so to buy time |
| Johnson | Yes baba |
| Parvez | We will plan better inshallah try our best so they can't take it back or get a hold on it |
| Johnson | Yes baba |

Johnson's statements that Parvez would "have to keep the lender company at bay" and "[s]omething to just hold them off from contacting the treasury department," indicate her concern that the matter would be reported to the Treasury Department by the lender, HFC. Parvez

---

[1] Benny is believed to refer to Benedetto Calcavecchia.

addressed her concern stating that "I have been doing that and will do so to buy time" and "[w]e will plan better inshallah try our best so they can't take it back or get a hold on it."

53. On May 21, 2023, Parvez and Johnson exchanged the following messages:

| Sender | Message |
|---|---|
| Johnson | Had a very real dream that pioneer froze the account, but not the Eden one. And [a Pioneer Bank employee] called and told you they froze them. I wasn't even thinking about the accounts last night. So you're going to have to go in the morning and transfer the money |
| Johnson | Immediately. Because when my dreams are vivid and real like that they happen |
| Parvez | Ok mama will take care of that inshallah |
| Johnson | Yes gonna really have to |
| Parvez | But we have been talking subconscious picks up there from couple of days back |
| Parvez | Yes yes mama I sure will |
| Johnson | Listen |
| Parvez | Will transfer all of it |
| Johnson | Never thought of the accounts once yesterday especially before bed. Every dream I have like that comes true |
| Johnson | Yes please |
| Parvez | Ok mama no problem will take care of it |
| Parvez | First things will go do tomorrow |
| Johnson | We will talk about that |
| Parvez | Ok mama no problem we will put it all in tomorrow |

Johnson's relation to Parvez of her dream regarding Pioneer's freezing of the account, "but not the Eden one," indicates that she was referring to Pioneer Account 8473, the original account into which the funds from the Treasury check were deposited.

54. On the following day, May 22, 2023, Parvez and Johnson entered the Wolf Road branch of Pioneer Bank and transferred $563,700 from Pioneer Account 8473 into Pioneer Account 2159.

C. **Purchase of the Defendant Real Property.**

55. On or about June 12, 2023, Drasana Johnson, on behalf of Helping Hand Properties 518, Inc., entered into a contract to purchase the Defendant Real Property from William Reyes for

$200,000. The section of the contract relating to mortgages is crossed out, and "CASH DEAL" is written in the margins of the document.

56. As noted above, seven (7) separate cashier's checks were drawn from BoA Account 7289 on June 29, 2023.

57. The cashier's checks, listed below, were used for the cash purchase of the Defendant Real Property from William Reyes, to pay off Reyes's mortgages on the Defendant Real Property, to pay the title company Shaker Abstract & Title, LLC, and to pay the legal fees associated with the purchase of the Defendant Real Property:

| Check No. | Amount | Payable To |
| --- | --- | --- |
| 1364016258 | $1,241.00 | Shaker Abstract & Title, LLC |
| 1364016259 | $1,000.00 | Shaker Abstract & Title, LLC |
| 1364016260 | $35,182.83 | Sunmark Credit Union – notation: Loan # xxx693-71 Reyes |
| 1364016261 | $120,409.06 | PennyMac Loan Services, LLC – notation: xxxxxx385 Reyes |
| 1364016262 | $750.00 | Kevin J. Engel, Legal Fees |
| 1364016263 | $1,000.00 | David R. Green, Esq. |
| 1364016264 | $43,092.36 | William J. Reyes |
| Total: | $202,675.25 | |

## CONCLUSION

58. The facts set forth above support a reasonable belief, as required by Supplemental Rule G(2)(f), that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff, the United States of America, respectfully requests that the Court:

(1) Issue a Notice of Complaint for Forfeiture Against Real Property and Summons, in the form submitted with this verified complaint;

(2) Direct any person having any claim to the Defendant Real Property to file and serve a Verified Claim and Answer as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5)(a) and (b);

(3) Enter judgment declaring the Defendant Real Property be forfeited and condemned to the use and benefit of the United States; and

(4) Award such other and further relief to the United States as it deems proper and just.

Dated: November 14, 2023                     Respectfully submitted,

                                             CARLA FREEDMAN
                                             United States Attorney


                                    By:      */s/ Elizabeth A. Conger*
                                             Elizabeth A. Conger
                                             Assistant United States Attorney
                                             Bar Roll No. 520872

VERIFICATION

STATE OF NEW YORK        )
                         )  ss:
COUNTY OF ALBANY         )

Vinesh Manglavil, being duly sworn, deposes and states:

I am a Special Agent with the Federal Bureau of Investigation. I have read the foregoing Complaint for Forfeiture and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this ___ day of November, 2023.

_____
Vinesh Manglavil
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 15th day of November, 2023.

_____
Notary Public

KATIE L. WALL
Notary Public, State of New York
Reg. #01WA6253406  Schenectady
Appointed in ~~Rensselaer~~ County
My Commission Expires 12/19 2023

14

# Attachment A

Attachment A: Tracing the Funds Used to Purchase the Defendant Real Property

