UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                  Plaintiff,

v.                                                                             1:23-cv-01473 (AMN/PJE)

Real property commonly known as 26 Everett
Road, Colonie, New York 12205,

                                  Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **UNITED STATES ATTORNEY'S OFFICE**<br>Northern District of New York<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | **ELIZABETH A. CONGER, ESQ.**<br>Assistant United States Attorney |
| 445 Broadway<br>Room 218<br>Albany, New York 12207<br>*Attorneys for Plaintiff* | **NICHOLAS C.E. WALTER, ESQ.**<br>Assistant United States Attorney |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On November 27, 2023, Plaintiff United States of America commenced this action via Verified Complaint for forfeiture *in rem* against certain real property located in Colonie, New York under 18 U.S.C. §§ 981(a)(1)(A) and (C) and pursuant to Rule G of the Supplemental Rules for Certain Admiralty of Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules" or "Supp. R.") as property involved in violations of 18 U.S.C. §§ 641, 1956, and 1957. *See* Dkt. No. 1. Presently before the Court is Plaintiff's second motion for default judgment and final order of

1

forfeiture under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Northern District of New York General Order #15.  *See* Dkt. No. 18 ("Motion").

For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

On November 27, 2023, Plaintiff filed its Verified Complaint for forfeiture *in rem,* seeking, *inter alia*, a declaration that real property commonly known as 26 Everett Road, Colonie, New York, 12205 ("Defendant Property") be forfeited and condemned to the use and benefit of the United States.  *See* Dkt. No. 1 at 12-13.  The Complaint alleges the Defendant Property was purchased using proceeds associated with a federal theft and money laundering scheme.  *See generally* Dkt. No. 1.

Plaintiff filed a previous motion for default judgment on February 21, 2024, *see* Dkt. No. 10, which the Court denied on July 11, 2024 on the ground that the Verified Complaint, Notice of Complaint, and Notice to Potential Claimants were not properly served on the owner of the Defendant Property, *see* Dkt. No. 14.  To remedy those service deficiencies, on July 30, 2024, the United States Marshals Service ("USMS") personally served the owner of the Defendant Property, Drasana Johnson, at 6 O'Neil Road, Albany, New York, with a copy of the Verified Complaint for Forfeiture *in Rem*, the Notice of Complaint for Forfeiture Against Real Property and Summons, and the Notice of *Lis Pendens*.  *See* Dkt. No. 15.  On September 16, 2024, Plaintiff requested an entry of default and submitted a supporting affidavit.  *See* Dkt. No. 16.  The same day, the Clerk entered default for a second time as to the Defendant Property, which was served by regular mail on Johnson.  *See* Dkt. No. 17.

On September 18, 2024, Plaintiff filed a revised Affidavit of Assistant United States Attorney Elizabeth A. Conger and a proposed Default Judgment and Final Order of Forfeiture to support the renewed Motion.  *See* Dkt. No. 18.  On October 30, 2024, the USMS personally served

2

Johnson with copies of the corresponding text notice (setting the motion response hearing deadline), as well as copies of the Motion papers (Dkt. Nos. 18 through 18-6). *See* Dkt. No. 19.

No verified claim or answer has been filed in this action. *See generally* docket sheet.

### III.   STANDARD OF REVIEW

#### A. Default Judgment

Fed. R. Civ. P. 55 "provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Id.* (quoting Fed. R. Civ. P. 55(a)).[1] "Second, pursuant to Rule 55(b)(2), the party seeking [a] default judgment is required to present its application for entry of judgment to the court." *Id.* "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).[2]

Default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Before a court enters a default judgment, it "must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for a default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Windward Bora, LLC v. Brown,* No.

---

[1] *See also* Northern District of New York local Rule ("Local Rule") 55.1 (requiring a party seeking a clerk's judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded").

[2] *See also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

21-CV-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (internal quotations and citations omitted).

### B. Forfeiture *in Rem*

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 *et seq. See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,413.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 Fed. Appx. 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture *in rem* must:

  a) be verified;

  b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;

  c) describe the property with reasonable particularity;

  d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

  e) identify the statute under which the forfeiture action is brought; and

  f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2).

Once the government has commenced a forfeiture *in rem* action, a claimant "who assets an interest in the defendant property may contest the forfeiture by filing a claim in the court where

the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

A "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Supplemental Rule G goes further, requiring Plaintiff to send notice to "any person who reasonably appears to be a potential claimant on the facts known to the [G]overnment before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C). "The notice must be sent by means reasonably calculated to reach the potential claimant." Supp. R. G(4)(b)(iii)(A).

Under Supplemental Rule G(3), "[i]f the defendant is real property, the [G]overnment must proceed under 18 U.S.C. § 986." Supp. R. G(3)(a). Specifically, commencement of a civil forfeiture action against real property is governed by 18 U.S.C. § 985(c)(1), which requires the Government to "(A) fil[e] a complaint for forfeiture; (B) post[] a notice of the complaint on the

5

property; and (C) serv[e] notice on the property owner, along with a copy of the complaint." 18 U.S.C. § 985(c)(1).

## IV. DISCUSSION

### A. Jurisdictional and Procedural Requirements

The Court first addresses its jurisdiction over this matter. Here, Plaintiff claims that it has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. Dkt. No. 18. According to Section 1345, district courts have "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."

Plaintiff argues that the Court has *in rem* jurisdiction over the Defendant Real Property and that venue is properly situated in this district specifically pursuant to Section 1355(b), which provides that a forfeiture action or proceeding "may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). Plaintiff also claims that "Defendant Real Property has not been seized but is within the jurisdiction of the Court. The United States does not request authority from the Court to seize the Defendant Real Property at this time." Dkt. No. 18-6 at ¶ 10. Therefore, because Plaintiff has commenced an action involving the forfeiture of real property located in the Northern District of New York, Plaintiff has established that the Court has proper subject matter jurisdiction and venue. *United States v. JP Morgan Chase Bank*, No. 5:13-CV-1363, 2015 WL 1820042, at *9 (N.D.N.Y. Apr. 22, 2015).

Next, the Court must assess whether Plaintiff has taken "all the required procedural steps in moving for [a] default judgment." *Windward Bora, LLC*, 2022 WL 875100, at *2. Within the

Second Circuit, district courts have adopted the approach that "forfeiture actions brought pursuant to Section 985 are governed by Fed. R. Civ. P. 4(e)'s personal service standard, and not Supplemental Rule G(4)'s 'reasonably calculated' standard." Dkt. No. 14; (citing *United States v. Real Prop. Located at 120 Teriwood St., Fern Park, Fla. 32730, et al.*, No. 16-CV-6101, 2017 WL 8640911, at *2-4 (E.D.N.Y. June 22, 2017)). Accordingly, Rule 4 demonstrates that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). Further, under New York C.P.L.R. § 308 service exclusively by mail is barred, and instead, "a plaintiff must **both** mail **and personally serve** a defendant with a copy of the summons." Dkt. No. 14 (emphasis added) (quoting *Podgoretz v. Shearson Lehman Bros., Inc.*, No. 86-CV-2681, 1994 WL 1877200, at *2 (E.D.N.Y. Mar. 23, 1994)).

Here, Plaintiff properly requested and obtained entry of a certificate of default by presenting the materials required by Fed. R. Civ. P. 55(a) and Local Rule 55.1. *See* Dkt. Nos. 16-17. Next, Plaintiff properly filed the present Motion in accordance with Fed. R. Civ. P. 55(b). *See generally* Dkt. No. 18. Additionally, Plaintiff provided documentation confirming that "all known potential claimants have been served" via a posted notice of the complaint on the Defendant Real Property and that the USMS, on behalf of Plaintiff, personally served on Johnson, the owner of the Defendant Property, the Verified Complaint for Forfeiture *in Rem*, the Notice of Complaint for Forfeiture Against Real Property and Summons, and the Notice of Lis Pendens. *See* Dkt. Nos. 15, 17-19.

Accordingly, the Court finds that Plaintiff has complied with all required procedural steps for seeking a default judgment, and that it has sufficiently remedied the previous deficiency by personally serving Johnson.

**B. Liability**

Next, the Court must assess whether Plaintiff's allegations, taken as true, establish liability. *See Winward Bora, LLC*, 2022 WL 875100, at *2. Plaintiff's action *in rem* is brought against the "Defendant Real Property pursuant to [18 U.S.C. §] 981(a)(1)(A) and (C) as the proceeds of offenses in violation of [18 U.S.C. §] 641 (theft of public money), and the proceeds of, and property involved in, offenses in violation of [18 U.S.C. §§] 1956 (money laundering), and 1957 (engaging in monetary transactions in property derived from specified unlawful activity)." Dkt. No. 18-6 at ¶ 3.

Under 18 U.S.C. §§ 371 and 641 "whoever embezzles, steals . . . or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any . . . money, or thing of value of the United States . . . shall be fined under this title or imprisoned[.]" Moreover, "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity," and "knowing that the transaction is designed in whole or in part to conceal or disguise the nature, [or] the location . . . of the proceeds of a specified unlawful activity," is liable under 18 U.S.C. § 1956. Finally, under 18 U.S.C. § 1957, "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished," if "that [] offense under this section takes place in the United States[.]"

The following factual allegations are taken from the Verified Complaint, Dkt. No. 18-6, and are deemed admitted and assumed to be true for purposes of ruling on the Motion. *See United States v. a red Volvo tractor*, No. 6:23-cv-751, 2024 WL 1345526, at *1 n.1 (N.D.N.Y. Mar. 29,

2024) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). In or around 2014, Mid-Atlantic Farm Credit issued a federal loan to Asjid Parvez via the Farm Service Agency ("FSA"), which is a part of the United States Department of Agriculture ("USDA"). Dkt. No. 18-6 at ¶ 13. Parvez later defaulted on the loan on or about March 1, 2018, owing $951,614.36. *Id.* at ¶ 13, 16. Subsequent to the default, the Inflation Reduction Act of 2022 was passed, which "allowed the FSA to financially assist certain distressed borrowers who had fallen behind in the repayment of their farm loans." Dkt. No. 18-6 at ¶ 18. In accordance with that program, in May 2023, the FSA informed Parvez that the United States Treasury would be issuing him a check in the amount of $972,564.61, made jointly payable to him and his lender ("Treasury Check"). *Id.* at ¶ 19. Following the mailing of the Treasury Check to Parvez's Albany home, Parvez informed Horizon Farm Credit ("HFC"), a credit company that merged with Mid-Atlantic Farm Credit, that he had never received the Treasury Check. *Id.* at ¶ 23. On that same day, he and Benedetto Calcavecchia entered the Pioneer Bank in Colonie, New York, wherein they presented a "Doing Business As" ("DBA") certificate that had been filed in Albany the previous day. *Id.* at ¶ 24. Parvez and Calcavecchia used the DBA certificate to open an account in the name of Calcavecchia, purporting to be doing business on behalf of HFC, and ultimately deposited the Treasury Check. *Id.* at ¶ 25. Once deposited, the funds from the Treasury Check were used, transferred, and spent to "fund teller's checks in the amount of $9,000 to Calcavecchia and $6,000 to an Albany-area attorney, and to make other purchases unrelated to the farm loan, such as a "$1,151.57 payment to E-Z Pass NY." *Id.* at ¶ 29.

Additionally, $953,468.13 that was deposited into the Pioneer Bank account was transferred into a separate account, on which Parvez and Johnson were both signatories. *Id* at ¶ 34. Johnson then transferred $600,000 from that account into her personal Bank of America

account, and then eventually into another, recently opened Bank of America account in the name of "Helping Hand Properties 518, Inc." *Id.* at ¶¶ 40-41. Johnson is President of that organization and the account's only signatory. *Id.* at ¶ 37, 40. Thereafter, several large withdrawals were made from the Helping Hand Properties 518, Inc. account for cashier's checks before the accounts were ultimately frozen. *Id.* at ¶ 43-46.

On or about June 12, 2023, Johnson purchased the Defendant Real Property from William Reyes for $200,000. *Id.* at ¶ 55. Johnson used the cashier's checks that were withdrawn from the Helping Hand Properties 518, Inc. bank account to effectuate the purchase, specifically to pay: (i) the remaining principal on Reyes's mortgages; (ii) the title company; and (iii) legal fees associated with the purchase. *Id.* at ¶ 57.

Throughout the series of events detailed above, Johnson and Parvez sent each other a series of text messages indicating that they were aware that the Treasury Check was being used in a manner that was not in accordance with its original purpose, while simultaneously working out plans to keep the money hidden and untouchable so that the Treasury Department "can't take it back or get a hold on it." *Id.* at ¶¶ 48-53. For example, on May 17, 2023, after Parvez expressed fear that Pioneer Bank would detect that they were misusing the funds, Johnson told Parvez that "[f]or that not to happen, you have to keep the lender company at bay. Respond back saying . . . [s]omething to just hold them off from contacting the treasury department." *Id.* at ¶ 52. Moreover, on May 21, 2023, Johnson texted Parvez that she had a dream that one of the recently opened bank accounts was frozen, and directed Parvez to "go in the morning and transfer the money," to which Parvez responded that he would "transfer all of it." *Id.* at ¶ 53.

Based on the foregoing, the Court finds that Plaintiff has set forth allegations which, taken as true, sufficiently establish liability for purposes of obtaining a default judgment. In particular,

10

Plaintiff has plausibly alleged that Defendants (1) engaged in the theft of public money exceeding $10,000; (2) knowingly used the stolen funds in a manner that was inconsistent with its intended purpose; and (3) used the stolen funds to purchase Defendant Real Property—in violation of 18 U.S.C. §§ 371, 641, 1956-57.

### C. Relief

Finally, the Court must determine whether the relief requested by Plaintiff should be granted. Pursuant to Supplemental Rule G, Plaintiff requests that the Court:

(1) issue a Notice of Complaint for Forfeiture Against Real Property and Summons, in the form submitted with the verified complaint;

(2) direct any person having any claim to the Defendant Real Property to file and serve a Certified Claim and Answer as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5)(a) and (b);

(3) enter judgment declaring the Defendant Real Property be forfeited and condemned to the use and benefit of the United States; and

(4) award such other and further relief to the United States as it deems proper and just.

Dkt. No. 18-6 at 22-23.

It is well established in the Second Circuit that real property which is "involved in money laundering" is subject to forfeiture. *United States v. Schlesinger*, 261 Fed. Appx. 355, 361 (2d Cir. 2008) (internal quotations omitted). Similar to the defendant in *Schlesinger*, who deposited the proceeds of his insurance and creditor fraud scheme into the operating accounts of his businesses to pay for monthly lease and tax expenses, the individuals associated with the Defendant Real Property in the instant case are alleged to have used the Treasury Check, which was issued to alleviate their farm loan debt, for their personal needs, including to purchase the Defendant Real Property.

Therefore, because Plaintiff's allegations, taken as true, meet its burden of showing that the Defendant Real Property was involved in money laundering, Plaintiff's request for forfeiture of the Defendant Real Property is granted.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for default judgment and final order of forfeiture, Dkt. No. 18, is **GRANTED**; the Court further

**ORDERS** that a Final Order of Forfeiture in the form submitted with the Verified Complaint be issued; the Court further

**ORDERS** that the Defendant Real Property be forfeited and condemned to the use and benefit of the United States; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 10, 2025
Albany, New York

_____
Anne M. Nardacci
U.S. District Judge